Filed 10/7/14  P. v. Jones CA3

# NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C066331 |
| Plaintiff and Respondent, | (Super. Ct. No. 08F06062) |
| v. | |
| ADAM CHRISTOPHER JONES, | |
| Defendant and Appellant. | |

A jury convicted defendant Adam Christopher Jones of stalking his work supervisor in violation of a temporary restraining order (Pen. Code, § 646.9, subd. (b)),[1] and he was placed on probation.

Defendant contends the trial court committed reversible error by (1) omitting a phrase from its oral reading of the instruction pertaining to the charge of stalking in violation of a temporary restraining order, even though the jury received the full text of

---

[1]     Undesignated statutory references are to the Penal Code in effect at the time of defendant's crimes.

the instruction in writing, and (2) misinstructing the jury in response to a question concerning the same instruction.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant's work supervisor, Angela, telephoned him when she learned he had closed the office early on a Friday afternoon without permission. She told defendant he had acted without permission, and she would deal with the issue the following Monday.

That night, defendant began sending Angela text messages. Over the weekend, he sent close to 100--many were nonsensical, others were bizarre or inappropriate.[2] Angela later testified she first felt harassed and unnerved by the messages. When the texts continued,[3] they included some messages that upset and scared her, and made her afraid to go outside alone, such as "I am an omega mason, one of the best in the world. I could have your husband shot just for a night, for a one-night stand. For me, it's worth it. Be sexy on Monday. That's a dare." She also became concerned for her son--whose plans to go to Texas were known in her office--after defendant texted "Watch my back and dress ugly. I am man. Bona fide three niggers in Texas dead." By Sunday, defendant was texting "Will fuck you hard. I shoot, but I love you like a kissing cousin. You will not--won't sell me. You can have my house key. Too damn cute. Sweet dreams" and

---

[2] The messages on Friday began: "Mea culpa. I will take the heat Monday." "CEO of Countrywide got 28 mil. Fannie Mae is worth 28 cents a share. Question." "You can't trust. I made my bones in a West African military prison when I was 21. Stay around if you like. I'm bona fide. It's the skulls and bones." "I sold Donald Rumsfeld. I know top notch D.C. call girls. Boss lady, be nice to me."

[3] "I get fired, I will be in Cambodia in three months. Yellow number four. Your looks and brains get me in trouble. See you Monday." "White house or I clean up big problems. I am the best at what I do, and what I do ain't nice. I will take you if you want me. D.N. I have a job, boss lady." "I sent 200M to Obama. No joke. We make love, you really own America. Am I scared? Call me M for murder. Good night and see you at my house. Seven. Out."

"Seventy-two hours to get amnesia." Other messages included a specific reference to Angela's son and Texas.[4] Defendant also left a message the he had "applied for a concealed weapons permit." Angela made no response to any of the text messages.

In addition to texts, defendant also left voicemail messages for Angela: in some, he appears to be trying to impress her by telling her (among other things) he is a massage therapist and a good cook.

Upset and scared, Angela obtained a restraining order against defendant, directing him not to contact her.

After defendant was served with the restraining order, he left two voicemail messages on Angela's work telephone. Both messages were played for the jury. In the first of these two messages,[5] defendant referred to "Don Cornelius." The trial court seemed to believe this was an attempted reference to "Don Corleone," the protagonist from The Godfather. In the second voicemail, defendant refers to Pol Pot,[6] and Angela interpreted defendant's repeated use of the word "delete" at the end of the second voicemail to mean "I should keep my mouth shut."

---

[4]     "Long. That's a triad . . . I am mean and cruel and I hurt people." "It's a black ops business. But I came . . . just to watch you walk. Honest in 100 plus N. Honest. I'm 100 women plus N." "I apologize for being disrespectful, but your son won't get touched in Texas. Pimp C, I have power. Only nigger you know and the omega brotherhood, USMC and NAK."

[5]     There is no transcript of the first voicemail in the record on appeal. Defendant's appellate counsel described that message as unintelligible.

[6]     The probation report described the first voicemail message defendant left after he was served with the temporary restraining order as "mostly inaudible," and reports that second said, "*Hello, this is Pol Pot Dictator from Myanmar's. What I would like to tell you today is that every voice-recording since 1984 has been recorded only in the capitol of the United Sates [sic], Washington DC. Every overseas recording has been recorded since 1989, and now every recording, every email, every voice-mail, every text-message is recorded all around the world in one data-bank. Learn to use the delete. Learn to use delete. It is not your enemy, it is your friend. Delete, delete, delete.*" (Original italics.)

In the first jury trial, the jurors deadlocked on count one, stalking (§646.9, subd. (a)), and count two, stalking in violation of a temporary restraining order (§646.9, subd. (b)), but convicted defendant of violating a court order (§ 166, subd. (a)(4)--count three) and using a phone to intentionally annoy (§ 653m, subd. (a)--count four).

The second jury deadlocked on count one, and convicted defendant on count two. Additional facts appear as necessary in the Discussion.

## DISCUSSION

### I. Oral Instructional Error

Defendant contends the court erred in failing to orally instruct the jury on count two that a temporary restraining order "was in effect at the time of the conduct" in order for him to be found guilty of stalking pursuant to section 646.9, subdivision (b).

The crime of stalking is committed when a person "willfully and maliciously harasses another person and . . . makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family . . . ." (§ 646.9, subd. (a).) Section 646.9, subdivision (b) makes it illegal to engage in this type of conduct "when there is a temporary restraining order, injunction, or any other court order in effect prohibiting [this] behavior . . . against the same party."[7]

---

[7] Section 646.9 provides in relevant part: "(a) Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking, punishable by imprisonment in a county jail for not more than one year, or by a fine of not more than one thousand dollars ($1,000), or by both that fine and imprisonment, or by imprisonment in the state prison.

"(b) Any person who violates subdivision (a) when there is a temporary restraining order, injunction, or any other court order in effect prohibiting the behavior described in subdivision (a) against the same party, shall be punished by imprisonment in the state prison for two, three, or four years. [¶] . . . [¶] "(e) For the purposes of this section, 'harasses' means engages in a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose.

4

The trial court correctly instructed the jury in writing with CALCRIM (2010) No. 1301 that the People must prove defendant (1) willfully and maliciously harassed the victim; (2) made a credible threat with the intent to place the victim in reasonable fear for her safety or for the safety of her immediate family; and, (3) "[a] temporary restraining order prohibiting the defendant from engaging in this conduct against the threatened person *(Angela H[.]) was in effect at the time of the conduct*." (Italics added.) However, in its oral reading of the instruction, the court omitted the phrase "was in effect at the time of the conduct" from the third element of the offense, and stated instead that the People must prove "a temporary restraining order *prohibited* the defendant from engaging in conduct against the threatened person Angela [H.]" (Italics added.)

We first note that it would be implausible to assume the jurors disregarded the requirement that there be an existing temporary restraining order simply because they did not hear the words "in effect at the time of the conduct" after being told they must find "a temporary restraining order *prohibited* the defendant from engaging in conduct against the threatened person Angela [H.]" The words, "a temporary restraining order prohibited," can only be understood to require that the restraining order was in effect at

---

"(f) For the purposes of this section, 'course of conduct' means two or more acts occurring over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of 'course of conduct.'

"(g) For the purposes of this section, 'credible threat' means a verbal or written threat, including that performed through the use of an electronic communication device, or a threat implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct, made with the intent to place the person that is the target of the threat in reasonable fear for his or her safety or the safety of his or her family, and made with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family. It is not necessary to prove that the defendant had the intent to actually carry out the threat. The present incarceration of a person making the threat shall not be a bar to prosecution under this section. Constitutionally protected activity is not included within the meaning of 'credible threat.' "

5

the time of the conduct. Indeed, defendant has offered no alternative meaning of these words that could have been adopted by the jury.

In any event, the error was harmless. The California Supreme Court has repeatedly held that "misreading of a jury instruction does not warrant reversal if the jury received the correct written instructions." (*People v. Prieto* (2003) 30 Cal.4th 226, 255; accord, e.g., *People v. Box* (2000) 23 Cal.4th 1153, 1212 ["misreading instructions is at most harmless error when the written instructions received by the jury are correct"]; *People v. Osband* (1996) 13 Cal.4th 622, 717 (*Osband*) ["as long as the court provides the jury with the written instructions to take into the deliberation room, they govern in any conflict with those delivered orally"].) In *Osband*, for example, the trial court misread various instructions to the jury: it failed to discuss one of the counts against the defendant, and it omitted words and substituted incorrect terms in several different areas. (*Osband, supra*, 13 Cal.4th at p. 686.) Yet the appellate court found these errors harmless because the jury received correct written instructions. (*Ibid*.) We presume, having no indication to the contrary, that the jury followed the proper written instructions it received in the instant case. (Cf. *id*. at p. 687.)

## II.  Court's Answer to the Jury's Question

During deliberations, the jury sent the following question:  "In terms of separating the second count from the first to define 'harassment,' would only the two voicemails that occurred after the restraining order was served be in consideration or all of the submitted evidence?"

The court responded:  "In making your determination as to Count 2, the entire factual context, including the surrounding events, and two voicemails, and the reaction of the victim, must be considered."

On appeal, defendant contends the court's answer improperly "encouraged the jury to base its finding as to count two upon matters occurring before the service of the restraining order," and failed to instruct the jury that the two post-restraining order

6

voicemail message "still had to meet the elements of stalking." In defendant's view, the two post-restraining order voicemail messages did not constitute a credible threat.

The court did not err in informing the jury it could consider "the entire factual context, including the surrounding events" in determining whether defendant committed the crime of stalking in violation of an existing restraining order. Section 646.9 punishes one who willfully harasses and makes a credible threat; it defines "harasses" as engaging in a "knowing and willful course of conduct" (§ 646.9, subd. (e)) and defines "credible threat" as one that may be implied by a pattern of conduct or a combination of statements and conduct. (§ 646.9, subd. (g); see fn. 8, *ante*.) "[I]n determining whether a threat occurred, the entire factual context, including the surrounding events and the reaction of the listeners, must be considered." (*People v. Falck* (1997) 52 Cal.App.4th 287, 298 (*Falck*).)

Here, then, the jury could properly consider defendant's course of conduct in determining whether he harassed Angela and made a credible threat. And a reasonable fact finder could have concluded from the totality of the evidence that defendant's pattern of conduct and communications to the victim constituted harassment and a "credible threat" that would make a reasonable person fear for her safety and/or the safety of her family. The jury's consideration of "the entire factual context, including the surrounding events" was relevant to its determination of these questions, and the court's answer to its question on this point did not misstate the law. (Cf. *Falck, supra,* 52 Cal.App.4th at p. 298.)

The court's response to the jury's query was, nevertheless, not completely clear. It did not clarify how the jury may consider the evidence of defendant's course of conduct before service of the temporary restraining order in deciding whether defendant engaged in stalking behavior while a temporary restraining order prohibiting the defendant from engaging in such conduct against Angela was in effect. Had the jury been informed more particularly that evidence of defendant's conduct before the restraining order could be

7

considered on count two for a limited purpose--for example, to show that the victim "understood defendant's statements and conduct to be threats" (*People v. McClelland* (1996) 42 Cal.App.4th 144, 153, fn. 3)--there would have been no error.

Examining the record as a whole, however, we conclude there is no reasonable probability of prejudice to defendant. The jury was properly instructed in writing on the elements of a violation of section 646.9 as alleged in count two, that each of the elements of the crime of stalking occur while "a temporary restraining order prohibiting the . . . conduct against the threatened person was in effect . . . ." (CALCRIM No. 1301.)

For purposes of determining whether an error is harmless, we may consider whether any prejudicial effect is reduced by the prosecutor's closing argument. (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 249-250.) In closing argument here, the prosecutor emphasized to the jury that a conviction on count two must be based on defendant's conduct after the protective order and, in examining "the two phone calls that we have," jurors could "take into account everything Angela knew at that point," including that defendant had announced his application for a concealed weapon permit, and her belief the second phone message references to "delete, delete" meant that she had to keep her mouth shut. Defense counsel also clearly told the jurors a stalking conviction in count two could be based only on the two voicemails defendant sent after the temporary restraining order.

Under these circumstances, any error or misstatements were harmless under any standard. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

8

## DISPOSITION

The judgment is affirmed.

                                                   _____MURRAY_____, J.

We concur:

_____HULL_____, Acting P. J.

_____ROBIE_____, J.